UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK A. ARMENANTE,

                              Plaintiff,

              -against-

FLYING COLOURS CORP. and FLEXJET,
LLC,

                              Defendants.

Case No. 1:25-cv-03378 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Mark Armenante ("Plaintiff" or "Armenante") filed this action against Flying Colours Corporation ("FCC") and FlexJet, LLC ("FlexJet," and together with FCC, the "Defendants") on March 27, 2025, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contract, and fraud. Dkt. 1-1 ("Compl."). On May 30, 2025, Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted and failure to plead fraud claims with the requisite particularity, respectively. Dkt. 14 ("Mot."). For the following reasons, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

On a motion to dismiss, the Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the light most favorable to the Plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). The Court will also consider the terms of the agreement that is attached as Exhibit A to the Complaint. Compl. ¶ 6; *id.*, Ex. A (the "Agreement"); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[A] complaint is deemed to include any written instrument attached to it as an exhibit or any

statements or documents incorporated in it by reference." (quoting *Int'l Audiotext Network Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

## I.    Factual Background

Plaintiff is the "beneficial owner" of a Bombardier BD-700-1A10 (GL-6000) aircraft bearing tail number N552YM (the "Aircraft") that he uses for business and personal travel. Compl. ¶ 5.  On March 7, 2023, Plaintiff, "through his agent," Solairus Aviation ("Solairus"), entered into a written agreement with FCC to perform certain work on the Aircraft, namely a 120-month inspection/maintenance program, as well as some exterior painting and internal refurbishing.  *Id.* ¶ 6; *see generally* Agreement.  Plaintiff alleges that "[d]uring the negotiations leading up to execution of the Agreement, it was made clear to FCC that time was of the essence for completion of its work on the Aircraft so as to ensure the least amount of downtime as possible based upon Armenante's travel itinerary in 2024."  Compl. ¶ 7. However, there is no "time is of the essence" provision in the Agreement; to the contrary, the Agreement states: "Any completion date stated in any document is merely an estimated completion date and is not guaranteed."  Agreement § 6.

On August 1, 2023, FlexJet acquired FCC, and Plaintiff claims, "on information and belief," that FlexJet changed FCC's internal policies and communicated to FCC that it should prioritize repairs and maintenance on FlexJet aircraft and deprioritize work for non-FlexJet aircraft such as the Aircraft owned by Plaintiff.  Compl. ¶¶ 8-9.

On October 27, 2023, FCC started working on the Aircraft and represented to Plaintiff that its work would be finished by March 21, 2024.  *Id.* ¶ 10.  According to Plaintiff, FCC knew that it would not finish its work by then.  *Id.*  "Armenante, through Solairus" then requested that FCC do "additional work on the Aircraft, which resulted in FCC extending the completion date for its work to April 11, 2024."  *Id.*  "Solairus again informed FCC" that

2

Plaintiff had travel plans scheduled to begin in April 2024, and that it was "imperative" that the work be completed by April 11, 2024. *Id.* ¶ 11. FCC confirmed the April 11, 2024 completion date, allegedly knowing that it would not meet that deadline. *Id.*

On January 30, 2024, Rich Shaw ("Shaw") and Jeff Pustina ("Pustina") from FCC told Solairus that FCC had pushed the completion date to June 21, 2024, because of labor shortages and changes in internal company policies stemming from FlexJet's acquisition of FCC. *Id.* ¶¶ 12-13. Shaw also told Solairus that, in the future, FCC would no longer be performing maintenance for private clients like Armenante and would only support FlexJet's own fleet. *Id.* ¶ 13. Shaw and Pustina further advised Solairus that FCC manpower had been shifted to FlexJet's fleet. *Id.* ¶ 14.

FlexJet and FCC knew that Plaintiff had extensive travel beginning in April 2024 and that if the plane was not ready by then, Plaintiff "would have no alternative" but to charter another private aircraft for his travel until his Aircraft was ready. *Id.* ¶ 16. Notwithstanding this, FCC did not finish the work until about July 16, 2024. *Id.* ¶ 17. Plaintiff "had no choice" but to charter a private plane similar to his Aircraft so that he did not have to forfeit his 2024 travel plans, resulting in monetary damages of more than $2 million. *Id.* ¶ 18.

## II.    Procedural History

Plaintiff initially filed his Complaint in New York State Court on March 27, 2025, alleging four causes of action: (1) breach of contract against FCC, (2) breach of the implied covenant of good faith and fair dealing against FCC, (3) tortious interference with contract against FlexJet, and (4) fraud against FCC and FlexJet. *See generally* Compl. Defendants removed the case to this Court on April 23, 2025, based on diversity jurisdiction. Dkt. 1.

On May 30, 2025, Defendants moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim and under Rule 9(6) for failure to plead fraud with the requisite

3

particularity.  *See* Mot.; Dkt. 15 ("Br.").  The parties jointly requested a stay of discovery until the motion to dismiss was decided, which the Court granted on June 13, 2025.  Dkt. 18. Plaintiff filed his opposition brief to the motion to dismiss on July 14, 2025, Dkt. 22 ("Opp."), and Defendants filed their reply on August 4, 2025, Dkt. 23 ("Reply").  The motion is therefore fully briefed.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, the facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alterations adopted) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  The Court shall not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

"In considering a motion to dismiss for failure to state a claim under [Rule] 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the

complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). "Where a document is referenced in a complaint, 'the documents control and this Court need not accept as true the allegations in the . . . complaint.'" *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (quoting *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000)).

Rule 8 provides a general pleading standard that requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[c]laims sounding in fraud must satisfy the heightened pleading standards of [Rule] 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "One of the primary objectives of Rule 9(b)'s particularity requirement is to ensure that defendants receive 'fair notice of a plaintiff's claim, to enable preparation of a defense.'" *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023) (alterations adopted) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

## DISCUSSION

### I. Choice of Law

The Agreement contains a choice of law provision and designates the laws of the Province of Ontario as the applicable law. *See* Agreement § 14 ("The rights and obligations of the Company and Customer shall be governed and determined, by the laws of the Province of Ontario"). Defendants argue that Ontario law does not govern Count I and II, the breach of contract and breach of covenant of good faith and fair dealing claims respectively, because Solairus, and not Plaintiff, is the counterparty to the Agreement. Br. at 7, n.5. However,

5

instead of briefing the issue, the parties address the claims under both New York and Ontario law.  Br. at 7-12; Opp. at 5-14.  Because neither party suggests that there are any relevant differences between New York and Ontario law as to the claims at issue, the Court will do the same.

As for Count III and IV, the claims for tortious interference with contract and fraud respectively, the parties agree that the choice of law provision does not govern, and that New York law applies because the locus of the tort and injury occurred in New York.  Br. at 12, n.7; Opp. at 14-25 (addressing Counts III and IV only under New York law).  The Court will follow the parties' lead and apply New York law to those counts.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (where "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is . . . sufficient to establish the applicable choice of law" (quoting *Golden Pac. Bancorp. v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001))); *Heath v. EcoHealth All.*, No. 23-cv-08930 (JLR), 2024 WL 5168072, at *2-3 (S.D.N.Y. Dec. 19, 2024) (applying New York law where parties implicitly consented by citing exclusively to New York law).

## II.    Breach of Contract Claim Against FCC

To state a breach-of-contract claim under New York law, Plaintiffs must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."  *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).  Similarly, under Ontario law, "the essential elements for a cause of action in breach of contract are the existence of a contract and its wrongful breach."  *Dundurn No. 314 (Rural Municipality) v. Canada (Attorney General)*, 2025 F.C. 366, para. 31 (Can.).

Plaintiff claims that FCC breached the Agreement because "[p]ursuant to the

6

Agreement, FCC agreed to complete its work on the Aircraft no later than April 11, 2024," and the work was not completed until July 16, 2024. Compl. ¶¶ 22-23. Plaintiff seeks over $2 million in damages for this material breach to cover the costs of chartering an alternative private aircraft to facilitate his April 2024 travel plans. *Id.* ¶¶ 18, 25.

FCC argues that Plaintiff's breach of contract claim should be dismissed because: (1) Plaintiff is not a party to the Agreement given that the only signatories are Solairus and FCC; (2) Plaintiff has not pleaded a breach of the Agreement; and (3) Plaintiff's requested relief of consequential damages for procuring a substitute aircraft are expressly disclaimed by the Agreement. Br. at 7-10. Plaintiff responds that he is a party to the Agreement, or at least third-party beneficiary to it, because the Complaint expressly pleads that he entered into the Agreement "through his agent, Solairus" and he is the beneficial owner of the Aircraft. Opp. at 5-7. He also claims that he has pleaded a breach of the Agreement, and that the damages he seeks are not excluded. *Id.* at 8-12. The Court need not address the first argument, because even if Plaintiff were a party to the Agreement through his agent or otherwise, Plaintiff has not pleaded a breach of the Agreement, nor damages that are recoverable under this Agreement.

The Complaint does not state a claim for breach of contract based on FCC's failure to complete the work by April 11, 2024. The Agreement is incorporated by reference into the Complaint and attached as Exhibit A. *See* Compl. ¶ 6; *id.*, Ex. A. *See, e.g.*, *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."); *Cary Oil Co. v. MG Refin. & Mktg., Inc.*, 90 F. Supp. 2d 401, 407 n.19 (S.D.N.Y. 2000) (considering contract incorporated

by reference into complaint which alleged breach of contract).  There is no deadline set forth in the Agreement and the Agreement expressly disclaims any liability for failure to perform the contracted-for work by a specific date.  It states, "Any completion date stated in any document is merely an estimated completion date and is not guaranteed."  Agreement § 6. The Court does not agree that Section 6 of the Agreement only applies to delays caused by issues, accidents, or contingencies "beyond [FCC's] control," as Plaintiff argues.  Opp. at 8. While some of the provision disclaims responsibility or liability for "non-performance or delay" based on causes "beyond [FCC]'s control," the Section is entitled "Performance of Work and Delays" and expressly and broadly provides that "[a]ny completion date" is an estimate and not guaranteed.  Agreement § 6.  Given the lack of a deadline in the Agreement and the disclaimer that completion dates are estimates and not guaranteed, Plaintiff's claim that FCC breached the Agreement by failing to finish work by April 11, 2024 fails to state a claim for breach.  *See McIver-Morgan, Inc. v. Dal Piaz*, 964 N.Y.S. 2d 515, 521 (N.Y. App. Div. 2013) (affirming confirmation of arbitration award where arbitrator found that contractor did not breach agreement "by failing to perform in a timely fashion" because there was "no language in the agreement that required [contractor] to perform by a date certain"); *Aylward v. Rebuild Response Group Inc.*, 2018 ONSC 4800, paras. 11, 62-63 (Can. Ont. Sup. Ct. J.) (estimated completion date did not create enforceable obligation where contract "included neither a start nor a completion date").

Insofar as Plaintiff is arguing that "FCC confirmed the April 11, 2024 completion date," Compl. ¶11, orally and not as part of the written contract, the Agreement contains a merger clause that forecloses any claim based on extra-contractual promises.  Section 1 of the Agreement states: "No modification or amendment of, or addition to these Conditions on any order accepted by [FCC] shall be binding unless in writing and signed by an officer of

8

[FCC]." Agreement § 1. This is reinforced by the "ACCEPTANCE" box that further states: "The terms and conditions may not be amended or combined with others without the written consent of [FCC]." *Id.* at 54. Therefore, the Agreement could not be modified orally to create a firm completion date. *See Bero Contracting & Dev. Corp. v. Vierhile*, 796 N.Y.S.2d 808, 809 (N.Y. App. Div. 2005) (finding no breach of contract where purchase agreement had merger clause that barred the admission of alleged agreement that was not reflected in the written agreement); *Knutson v. G2 FMV, LLC*, No. 14-cv-01694 (RWS), 2018 WL 286100, at *6, *9 (S.D.N.Y. Jan. 3, 2018) (dismissing breach of contract claim in part because alleged oral representations that varied from the terms of the contract were "barred by the clear merger clause" in the agreement); *Honey Bee (Hong Kong) Ltd. v. VitaSound Audio Inc.*, 2018 ONSC 5787, paras. 38-39 (Can. Ont. Sup. Ct. J.) (rejecting argument that parties modified contract orally because contract expressly stated that it could only be modified by signed writing). Plaintiff has not pleaded that there is any written amendment to the Agreement that set a firm completion date or modified the Agreement's express statement that completion dates are estimates and not guaranteed. Nor has Plaintiff cited any case law in support of his opposition to Defendants' motion to dismiss on this ground.

Plaintiff has also expressly waived the only damages he seeks on his breach of contract claim, namely the costs associated with chartering a replacement aircraft. Section 17 of the Agreement states that "IN NO EVENT SHALL [FCC] BE LIABLE FOR ANY PROSPECTIVE OR SPECIAL, INCIDENTAL OR CONSEQUENTIAL COMMERCIAL DAMAGES OR LOSSES." Agreement § 17. Plaintiff does not claim that the disclaimer is unconscionable or refute the authority cited by Defendants that such clauses disclaiming consequential damages are generally enforceable. *See, e.g. Metro Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 643 N.E.2d 504, 507 (N.Y. 1994) (enforcing clause excluding indirect

damages for developer's performance because such clause represents parties' intended "allocation of the risk of economic loss"); *Fraser Jewellers (1982) Ltd. v. Dominion Elec. Prot. Co.* (1997), 34 O.R. 3d 1 (Can. Ont. C.A.) (contractual limitation of liability clauses "should, prima facie, be enforced according to [their] true meaning"). Instead, Plaintiff argues that (1) the disclaimer does not unambiguously apply to Plaintiff's claim for failure to deliver the Aircraft on time and only applies to workmanship issues, (2) the damages that Plaintiff seeks are direct and not consequential damages, and (3) Defendants are foreclosed from relying on this disclaimer because they acted in bad faith. Opp. at 9-12. The Court does not agree.

As for the scope of the disclaimer, there is a reference to disclaiming consequential damages in Section 16 of the Agreement that covers "WARRANTY AND DISCLAIMERS," stating FCC "will not warrant nor be liable for any consequential damages or incidental damages arising out of or related to their performance under this proposal." Agreement § 16. Even if the Court were to find that, notwithstanding the clause's broad language, there was at least some ambiguity as to whether that clause is limited to damages related to workmanship issues because other surrounding sentences in Section 16 refer to workmanship, Section 17 of the Agreement is a standalone unqualified "LIMITATIONS OF LIABILITY" provision that clearly disclaims liability for any consequential damages related to the Agreement.

The Court is similarly unpersuaded by Plaintiff's argument that the damages he is seeking are not consequential damages and are instead expectation or benefit-of-the-bargain damages. Opp. at 10-11. Under the Agreement, FCC was to provide a comprehensive ten-year maintenance program for the Aircraft as well as to perform some exterior painting and interior refurbishing. Compl. ¶ 6. Direct or general damages are, therefore, those damages that would reflect the value of the performance promised, such as damages related to the

failure to provide defect-free maintenance, painting, and refurbishing. *See Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000) ("A plaintiff is seeking general damages when he tries to recover 'the value of the very performance promised.'") (quoting 3 Dan B. Dobbs, Dobbs Law of Remedies § 12.2(3) (1993))). The $2 million that Plaintiff paid to rent a substitute aircraft for his travels because he did not have a painted and refurbished Aircraft by that time are "consequential damages, which are indirect and compensate for additional losses incurred as a result of the breach." *Latham Land I, LLC v. TGI Friday's, Inc.*, 948 N.Y.S.2d 147, 151 (N.Y. App. Div. 2012) (quoting *Appliance Giant, Inc. v. Columbia 90 Assoc., LLC*, 779 N.Y.S.2d 611, 613 (N.Y. App. Div. 2004)). Even if Defendants were aware that he had "an extensive travel itinerary commencing in April 2024," Compl. ¶ 16, foreseeability does not render the damages direct. Even consequential damages, such as lost profits and the like, are not recoverable unless they were "foreseeable and within the contemplation of the parties at the time the contract was made." *Latham Land*, 948 N.Y.S.2d at 152 (quoting *Am. List Corp. v. U.S. News & World Rep.*, 549 N.E.2d 1161, 1164 (N.Y. 1989)); *see also Sprayregen v. Mangiameli*, No. 14-cv-06419 (JMA) (AKT), 2016 WL 264934, at *4 & n.4 (E.D.N.Y. Jan. 21, 2016) (explaining that direct damages for failure to complete construction before winter began were a return of the amounts paid, while consequential damages were the foreseeable increased financial costs and other costs associated with inability to obtain a substitute contractor in time). In any event, given that the Agreement provided that any completion date was an estimated one and not guaranteed, it was not foreseeable that FCC would be liable for the payment of a replacement aircraft for Plaintiff's travels while the painting and refurbishing work was being completed.

Finally, Plaintiff has not pleaded willful or grossly negligent acts by Defendants that would preclude the application of the clear limitation on liability provisions. Opp. at 11-12

11

(citing *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 967 N.E.2d 666 (N.Y. 2012)).

Plaintiff points to allegations that FlexJet changed FCC's policies when FlexJet acquired FCC

to deprioritize non-FlexJet aircraft repairs and focus first on the maintenance and repair of

FlexJet aircraft. *Id.* at 12 (citing Compl. ¶ 9). Plaintiff also alleges that FCC informed him in

January 2024 that there would be a three-month delay to June 21, 2024, to complete the work

because of labor shortages and the aforementioned changes to internal policies and priorities

from the FlexJet acquisition. *Id.* (citing Compl. ¶¶ 12-14). A three-month delay due to labor

shortages and reallocation of resources to manage one's business does not rise to the level of

gross negligence or intentional wrongdoing that would result in the avoidance of a negotiated-

for disclaimer as against public policy in light of the contractual provision that states that

completion dates are estimates and not guaranteed. *See, e.g.*, *Russell Publ'g Grp., Ltd. v.*

*Brown Printing Co.*, No. 13-cv-05193 (SAS), 2015 WL 500174, at *1 (S.D.N.Y. Feb. 5,

2015) ("'Intentional nonperformance motivated by financial self-interest' will not render a

limitation of liability clause unenforceable," but limitation of liability clause is unenforceable

if acts underlying breach were willfully undertaken with the intent to inflict harm or grossly

negligent (alterations adopted) (quoting *Metro. Life Ins.*, 643 N.E.2d at 886)); *Abacus*, 967

N.E.2d at 669 (N.Y. 2012) ("[G]ross negligence, when invoked to pierce an agreed-upon

limitation of liability in a commercial contract, must 'smack[ ] of intentional wrongdoing'"

(second alteration in original) (quoting *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1371

(N.Y. 1992))).

 For all of these reasons, Plaintiff has not stated a claim for breach of contract.

## III. Breach of Implied Covenant of Good Faith and Fair Dealing Claim Against FCC

 Defendants next move to dismiss Plaintiff's claim for breach of the implied covenant

of good faith and fair dealing against FCC. Plaintiff claims that FCC breached the implied

covenant of good faith and fair dealing because it stated that work would be completed by April 11, 2024, and then diverted resources and manpower such that it did not meet that deadline.  Compl. ¶ 28.

Under New York law, a duty of good faith and fair dealing is implied in every contract, such that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (quoting *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002)).  Similarly, Ontario law requires that "parties generally must perform their contractual obligations honestly and reasonably and not capriciously or arbitrarily."  *Bhasin v. Hrynew,* [2014] 3 S.C.R. 494, para. 63 (Can.).

This claim must be dismissed for several reasons.  First, it is duplicative of Plaintiff's breach of contract claim.  "A claim for violation of the covenant survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract."  *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022).  Plaintiff's breach of contract claim alleges that FCC breached the Agreement by failing to complete its work by April 11, 2024, which resulted in $2 million dollars in damages because Plaintiff had to charter alternative aircraft because of the delay.  Compl. ¶¶ 22-25.  Plaintiff's breach of the implied covenant of good faith and fair dealing claim similarly asserts that FCC "prevent[ed] Plaintiff from receiving the benefit and rights for which he had bargained," *id.* ¶ 28, by failing to complete its work by April 11, 2024, as agreed upon, because it diverted resources and manpower, resulting in the same $2 million dollars in damages, *see id.* ¶¶ 27-29.  The claims are based on the same allegations and are, therefore, duplicative.

13

Plaintiff asserts that the claims are distinct because his claim for breach of the covenant of good faith and fair dealing "involve[s] efforts by one party to a contract to subvert *the contract itself*." Opp. at 13. The Court does not agree. The Agreement provided that FCC would perform a ten-year maintenance program on the Aircraft as well as certain exterior painting and interior renovations. Compl. ¶ 6. There is no allegation that this was not done, or that the workmanship was deficient. Rather, Plaintiff is claiming that the work was delayed for three months, which does not "subvert the contract itself" given that the contract expressly states that all completion dates are estimates and not guaranteed. Agreement § 6.

Relatedly, this claim must be dismissed because "[t]he implied covenant does not include any term inconsistent with the terms of the contractual relationship, or create duties which are not fairly inferable from the express terms of that contract." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 288 (S.D.N.Y. Mar. 31, 2023) (citation omitted). "Nor can it be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Id.* (quotation marks and citation omitted). Moreover, "[t]he implied covenant does not undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's expected benefit." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F. 3d 807, 817 (2d Cir. 2014) (quotation marks and citation omitted); *Bhasin v. Hrynew*, [2014] 3 S.C.R. 494, para. 65 (Can.) (while the implied covenant "requires that a party not seek to undermine [the other party's] interests in bad faith," "it does not require acting to serve those interests in all cases"). Thus, even if FCC prioritized other work ahead of Plaintiff's repairs, the express language of the Agreement providing that completion dates are estimates and not guaranteed (with a merger clause foreclosing oral amendments) is incompatible with an alleged implied duty to perform the work by a date certain.

14

Indeed, Plaintiff's cited case, *Butvin v. DoubleClick, Inc.*, No. 99-cv-04727 (JFK), 2001 WL 228121 (S.D.N.Y. Mar. 7, 2001), *aff'd*, 22 F. App'x 57 (2d Cir. 2001), reinforces the Court's conclusion.  In *Butvin*, the plaintiff claimed that his employer breached the implied covenant of good faith and fair dealing in part because it would not permit him to exercise his options after the termination of his employment.  *Id.* at *1-2.  The court dismissed the claim, holding that the stock option agreement itself did "not entitle[] [the plaintiff] to exercise his entire [o]ption after he was fired[,] and the [c]ourt cannot impose an obligation that was not agreed to by the parties."  *Id.* at *9.

Therefore, Plaintiff has not stated a claim for a violation of the implied covenant of good faith and fair dealing.

## IV.    Tortious Interference with Contract Claim against FlexJet

Defendants next move to dismiss Plaintiff's tortious interference with contract claim against FlexJet.  Plaintiff claims that FlexJet tortiously interfered with the contract between FCC and FlexJet by directing FCC to deprioritize non-FlexJet maintenance services after FlexJet acquired FCC.  Compl. ¶¶ 31-33.

A claim for tortious interference with contract requires pleading the following elements: "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126-27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)); *accord Ferdinand v. Siegel*, 229 N.Y.S.3d 578, 579 (N.Y. App. Div. 2025).

Because Plaintiff has not adequately alleged a breach of the Agreement, *see supra* at Part II, he has not stated a claim against FlexJet for tortious interference with contract.  *See*

15

*Berenson v. Biden*, 791 F. Supp. 3d 398, 433 (S.D.N.Y. 2025) (finding that plaintiff's "tortious interference with contract claim fails and is dismissed" where complaint "failed to allege any breach"), *appeal filed sub nom.*, *Berenson v. Trump*, No. 25-2709 (2d Cir. Oct. 28, 2025); *111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*, 198 N.Y.S.3d 521, 524 (N.Y. App. Div. 2023) (affirming dismissal of tortious interference claim where plaintiff "failed to sufficiently plead an underlying breach of contract"); *Sharkey v. Zimmer USA, Inc.*, No. 20-cv-08258(JPC), 2021 WL 3501160, at *10 (S.D.N.Y. Aug. 9, 2021) (dismissing tortious interference claim where there was no underlying breach of contract or implied covenant); *Byrd v. Goord*, No. 00-cv-02135 (GBD), 2005 WL 2086321, at *5 (S.D.N.Y. Aug. 29, 2005) (same); *Kirschner v. CIHLP LLC*, No. 15-cv-08189 (RA), 2016 WL 5720782, at *5 (S.D.N.Y. Sept. 30, 2016) (same).

Therefore, Plaintiff's tortious interference with contract claim is dismissed.

## V.    Fraud Claim against FCC and FlexJet

Finally, Defendants move to dismiss Plaintiff's fraud claim against both Defendants. Plaintiff claims that FlexJet changed FCC's policies when it acquired FCC, such that maintenance of non-FlexJet aircraft was deprioritized.  Compl. ¶ 38.  This policy change, according to Plaintiff, was concealed from Plaintiff until January 30, 2024, when it was too late for FCC to complete the work on Plaintiff's Aircraft by the promised April 11, 2024 deadline.  *Id.* ¶¶ 39-41.

To state a claim for fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages."  *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015)).  Under Rule 9(b), a party alleging

16

fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this "heightened pleading standard, the complaint must: (1) detail the events giving rise to the fraud, such as the statement or omission that is alleged to be fraudulent, the identity of the speaker, the location of the fraud, and the reason the statement is fraudulent; and (2) allege facts 'that give rise to a strong inference of fraudulent intent.'" *Smith*, 583 F. Supp. 3d at 568 (quoting *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171).

Defendants first argue that dismissal is appropriate because Plaintiff fails to plead his fraud claim with the required particularity under Rule 9(b). Br. at 15-17. Indeed, Plaintiff has failed to allege who made the supposed fraudulent representation that FCC would be completing its work on the Aircraft by April 11, 2024, where or in what context the statement was made, or to whom the statement was made. There are also sparse details pleaded about the decision by FlexJet to intentionally withhold information from Plaintiff regarding its business priorities that would support a strong inference of fraudulent intent. The Court agrees with Defendants that these failings are grounds for dismissal. *See Bombardier Cap., Inc. v. Naske Air GmbH*, No. 02-cv-10176 (DLC), 2003 WL 22137989, at *3 (S.D.N.Y. Sept. 17, 2003) (finding conclusory allegations insufficient to meet Rule 9(b)'s pleading requirements where defendant-counterclaimant "fail[ed] to identify the allegedly fraudulent statements made by [plaintiff], the speaker or speakers of the allegedly fraudulent statements, or when and where the statements were made"); *Chechele v. Laubies*, 527 F. Supp. 3d 526, 536 (S.D.N.Y. 2021) ("Rule 9(b) requires that claims sounding in fraud recite the who, what, when, where, and how." (quotation marks and citation omitted)).

In any event, and more importantly, even if Plaintiff were to add more particularized facts, Plaintiff has failed to plead facts that support a plausible inference that he reasonably relied on a materially false representation by Defendants, a required element for a fraud claim.

17

"In assessing the reasonableness of a plaintiff's alleged reliance, we consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (affirming dismissal of fraud claim because facts pleaded were insufficient to support inference that reliance on extra-contractual representations were reasonable). Moreover, "New York courts have determined as a matter of law that a party's reliance was unreasonable where the alleged misrepresentation is explicitly contradicted by the written agreement." *Robinson v. Deutsche Bank Tr. Co. Ams.*, 572 F. Supp. 2d 319, 323 (S.D.N.Y. 2008).

Even assuming the representations were made to, or withheld from, Plaintiff through his agent Solairus, Plaintiff is a sophisticated businessman who bargained to pay Defendants nearly $4.5 million to service his private Aircraft. Agreement at 2. Yet his Agreement formalizing that bargain does not set forth a firm completion date, does not state that completion dates provided to Plaintiff would be firm dates or that time is of the essence, and does not provide that Plaintiff's Aircraft would be prioritized. To the contrary, the Agreement expressly states that completion dates in any document are merely estimated completion dates and not guaranteed. Agreement § 6. The Agreement further provides, in several places, that there shall be no modifications to the Agreement unless signed and in writing. Agreement § 1; *id.* at 54. Therefore, it would be unreasonable as a matter of law for Plaintiff to rely on a supposed oral misrepresentation of a firm completion date, because any such promise would be expressly contradicted by the written Agreement he bargained for, which disclaims any guaranteed completion dates and bars oral modifications.[1]  *See, e.g., Capax Discovery, Inc. v.*

---

[1] For the same reason — and contrary to Plaintiff's contention, *see* Opp. at 23 — any such promise is not collateral to the Agreement. *See End Line Invs., Ltd. v. Wells Fargo Bank,*

18

*AEP RSD Invs., LLC*, No. 17-cv-00500, 2020 WL 5815943, at *11 (W.D.N.Y. Sept. 30, 2020)

("Where, as here, a party claims to have relied on 'alleged oral promises[ ] which directly

contradict the terms of' an agreement in the party's possession, that reliance is 'unreasonable

as a matter of law.'" (alteration in original) (quoting *Morrissey v. Gen. Motors Corp.*, 21 F.

App'x 70, 73 (2d Cir. 2001) (summary order))), *aff'd sub nom.*, *Baiocco v. AEP RSD Invs.,*

*LLC*, No. 21-2475-cv, 2022 WL 2902081 (2d Cir. July 22, 2022) (summary order); *Gorham-*

*DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 297 (N.D.N.Y. 2008)

(holding that "it is not reasonable to forgo payment due based on oral assertions of a payment

amount contradicting the written bill without requiring adequate written assurances, as

required by the [written contract]"), *aff'd*, 421 F. App'x 97 (2d Cir. 2011) (summary order);

*Prestige Foods, Inc. v. Whale Sec. Co., L.P.*, 663 N.Y.S.2d 14, 15 (N.Y. App. Div. 1997)

("Flatly contradicting plaintiffs' claim of reasonable reliance on defendant's promises to

proceed with the transaction, necessary to the causes of action for fraudulent and negligent

misrepresentation, is the provision of the letter agreements permitting defendant to withdraw,

in its sole judgment, upon the existence of various conditions, the nonexistence of which is

not addressed by plaintiffs.").

     Plaintiff's fraud claim is therefore dismissed.

## VI.    Leave to Amend

     Plaintiff requests leave to amend if some or all of the motion to dismiss is granted.

Opp. at 25.  Rule 15(a) provides that courts "should freely give leave [to amend] when justice

---

*N.A.*, No. 16-cv-07009 (PGG), 2018 WL 3231649, at *4-5 (S.D.N.Y. Feb. 27, 2018)
(explaining that evidence of an oral promise may be considered notwithstanding existence of
written agreement with merger clause only if the promise is "collateral to the written
agreement," and that an oral promise is collateral only if it does "not contradict express or
implied provisions of the written [agreement]" (quoting *Mitchill v. Lath*, 160 N.E. 646, 647
(N.Y. 1928))).

so requires." Fed. R. Civ. P. 15(a)(2).  Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  "[A] district court may properly deny leave when amendment would be futile." *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1998).  To seek leave to amend, a plaintiff "must . . . provide some indication of the substance of the contemplated amendment before a court could entertain the request." *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 624 (S.D.N.Y. 2014); *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.").

Here, Plaintiff indicates that he would amend his Complaint to assert breach of the implied covenant as an element of the breach of contract claim and would provide more specificity regarding his fraud claim.  Opp. at 25.  Given the express terms of the Agreement, neither of those proposed amendments would solve the pleading deficiencies the Court has identified in this Opinion, and thus amendment would be futile.  Therefore, leave to amend is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's request for leave to amend is DENIED.  The Clerk of Court is respectfully directed to CLOSE the case.

Dated: March 18, 2026
         New York, New York

                                        SO ORDERED.

                                        _____
                                        JENNIFER L. ROCHON
                                        United States District Judge

20